# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 20, 2018

155545

Stephen J. Markman,
Chief Justice

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellant,

v

                                          SC: 155545
                                          COA: 329217
                                          Wayne CC: 14-002709-FC

CARLOS MARQUIS LOVE, JR.,
      Defendant-Appellee,
_____/

       On order of the Court, the application for leave to appeal the February 7, 2017 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

       ZAHRA, J. (*dissenting*).

       In this case, a jury convicted defendant of three counts of first-degree criminal sexual conduct and four counts of assault with intent to commit criminal sexual conduct for his role in the gang-rape of a young woman at a party. Following an evidentiary hearing, the trial court granted defendant a new trial based solely on defendant's claim that his counsel abandoned him during trial. The Court of Appeals reversed and remanded for the trial court to consider ineffective assistance of counsel under the correct standard, i.e., whether defendant was prejudiced. The trial court conducted a second evidentiary hearing. Afterward, the court issued an opinion from the bench granting defendant a new trial. In doing so, the court assumed that defendant's newly discovered witness, Darrell Gleese, was credible because he lacked a criminal record. The court failed to properly evaluate Gleese's credibility in light of the evidence presented during the entirety of the proceedings. Instead, the court injudiciously found him credible simply because he lacked a criminal record. I would remand to a different judge to evaluate Gleese's credibility in light of the facts presented at trial.

       In my view, the trial court entirely failed in its obligations to determine whether Gleese's testimony was believable when compared to the evidence already presented against defendant. As in all claims of ineffective assistance of counsel, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]"[1] In *People v Toma*,[2] this Court

---

[1] *People v Mitchell*, 454 Mich 145, 167 (1997).

[2] *People v Toma*, 462 Mich 281, 308 (2000).

explained that even though the defendant's testimony offered the only direct rebuttal of the prosecutor's theory, an effective rebuttal could only have been accomplished if the testimony was believed.  That is similar to the issue in the present case.  Here, the trial court stated in its ruling, "There is a reasonable probability of [a different outcome] because [Gleese] would have called into question the testimony of the prosecution's witnesses . . . ."  Previously, the court had mentioned that there was nothing to directly impugn Gleese's credibility, but the court seemed to reach that conclusion based solely on Gleese's lack of a criminal record.  The court conceded that "there [were] other questions that could be raised if he took the stand . . . .  So timing would have been important at the time that the trial took place concerning whether or not Mr. Gleese's testimony was going to be believed . . . ."  But the court made no attempt to articulate why Gleese should be believed in the first place, given the overwhelming evidence presented at trial that called his credibility into question.  In other words, while the court acknowledged that "[t]he only attack on [Gleese's] credibility conceivably would have been that his testimony may have been inconsistent with the testimony of the prosecution's witnesses presented during the course of the trial," the court absolutely failed to evaluate whether Gleese should even be believed in light of that evidence.

Gleese's credibility was highly questionable and certainly warranted some examination.  Direct conflicts between Gleese's testimony and testimony of the other witnesses, along with a lack of corroborating evidence, raised questions as to whether Gleese was even at the party, let alone whether his testimony could be believed.

There was no testimony from other witnesses that suggests Gleese was at the party; in fact, testimony from the trial suggests that Gleese was not at the party.  At trial, Destiny, Gina, Alison, and the victim were the only four party attendees to testify.  They all agreed that about 10 to 15 people attended the party.  Gina specified that there were eight boys; she knew defendant, Dantraz, Dalvyn, and Durell, plus there were four boys whom she did not know.  This fits neatly with Alison's testimony that in addition to the four boys Gina named, Craig, Joe, Dre, and Zay attended the party.  Destiny testified that in addition to herself, Gina, Alison, Shankey, the victim, Lakiya, Lenay, and Gina's friend (Stocey) were the female attendees. In their combined testimony, the witnesses actually named 16 people at the party.[3]  Significantly, Darrell Gleese was not mentioned by any of the witnesses.  Given the consensus estimate of 10 to 15 party attendees, it seems highly unlikely that anyone went unnamed.  It is even more suspicious that Gleese claimed to have come with his friend Kenny and observed a man named Stan at the party, since they were not mentioned by any of the other witnesses either.

Further questions are raised about Gleese's presence at the party by his seeming lack of knowledge about basic facts of the evening.  Gleese testified that he did not remember playing any games.  Every other witness testified that everyone at the party

---

[3] Gina's boyfriend, Courtney Ellison, and the victim's friend, someone named Juan, stopped by after the party, but that was after the alleged rape.

played a game called "I Never." By all other accounts, this game immediately preceded the victim's going into the bedroom, so it seems unsettling that Gleese would not remember it, even when specifically asked about it. Additionally, Gleese, who claims to have been at the apartment from 11 p.m. until 2 a.m. or 3 a.m., testified that he never saw defendant leave the apartment. There is evidence (a text message and witnesses) indicating that defendant left the apartment around 1:10 a.m. Finally, Gleese testified that Gina never left the party. This again conflicts with the testimony of other witnesses who said that Gina left to take a friend home and later returned with her boyfriend. There is also a phone record that Destiny called Gina at 1:46 a.m., which suggests that she was not in the apartment at that time.

Even if Gleese did attend the party, there are other reasons to question his credibility. First, Gleese claimed to have spoken with a male attorney before the original trial. Two attorneys represented defendant, and both testified that only the female attorney, Ms. Palmore-Bryant, communicated with Gleese. Second, Gleese initially said that defendant fell asleep around 1 or 1:30 a.m., but later said it was 12 a.m. Gleese's testimony that the victim was still in the bedroom when he left the party (between 2 and 3 a.m.) is also dubious. Evidence presented at trial shows that the victim's mother called 9-1-1 before 3 a.m. The victim saw her mother in person before the call was made, so she must have left the bedroom by that point. It is possible to fit this on Gleese's timeline, but barely. Finally, Gleese claims to have attended every day of defendant's trial. Despite this, and claiming to have exculpatory testimony, Gleese did not make defendant or defendant's attorneys aware of his presence. Further, defendant's attorney, Palmore-Bryant, claimed to have looked for him in the courthouse, but she did not find him. While again this is possible, it seems incredible.

As this Court explained in *Toma*, the posited testimony needs to be believed in order to make a different outcome reasonably probable. There are many red flags raised by Gleese's testimony that warrant a closer look. While I cannot say for certain that Gleese's testimony is false, I believe that the trial court has not provided any factual basis to conclude that he should be believed. MCR 6.431(B) provides that "the court may order a new trial on any ground that would support appellate reversal of the conviction" and that the court "must state its reasons for granting or denying a new trial orally on the record or in a written ruling made a part of the record." And while the Court of Appeals properly noted that "[t]he trial court was present throughout the trial and had a 'special opportunity . . . to judge the credibility of the witnesses" and the other evidence,"[4] the trial court's assumption that Gleese was credible based on lack of a criminal record does not implicate this special opportunity. I find the court's failure to assess Gleese's

---

[4] *People v Love (After Remand)*, unpublished per curiam opinion of the Court of Appeals, issued February 7, 2017 (Docket Nos. 324992 and 329217), p 6, citing MCR 2.612(C) and MCR 6.001(D).

testimony in light of evidence presented during the trial very troubling. Accordingly, I believe this case should be remanded to a different judge to evaluate Gleese's credibility in light of the facts presented at trial.

WILDER, J., joins the statement of ZAHRA, J.

MARKMAN, C.J., would remand to the trial court for an evidentiary hearing to reassess the credibility of the newly discovered witness for the reasons set forth by Justice ZAHRA in his dissent, except that he would not remand to a different trial judge.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 20, 2018



Clerk

p0717